No. 79SC70

**Philip F. DiLeo v. Barry Koltnow, Boulder Daily Camera, Boulder Publishing, Inc.; Colorado Press Association, Colorado Broadcasters Association, and KBTV, Inc.**

(613 P.2d 318)

Decided June 23, 1980.                    Rehearing denied July 7, 1980.

Gerash & Robinson, P.C., Scott H. Robinson, for plaintiff-appellant.

Newcomer & Douglass, William A. Ahlstrand, for defendants-appellees.

Yegge, Hall & Evans, Thomas B. Kelley; Davis, Graham & Stubbs, Richard P. Holme, for amici curiae.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

Plaintiff-appellant, Philip F. DiLeo, commenced a defamation action against defendants-appellees Boulder Daily Camera, Boulder Publishing, Inc., publisher of the Boulder Daily Camera, Barry Koltnow, a reporter, and others. The trial court granted defendants' motion for summary judgment and DiLeo appealed to the court of appeals. The case was transferred to this court prior to judgment pursuant to C.A.R. 50. We affirm the trial court's judgment.

The case arises out of a controversy stemming from DiLeo's employment as a patrolman for the Boulder Police Department (Department). DeLeo's employment, which had commenced in October 1972, was terminated by the Department in June 1973. DiLeo commenced a court action in December 1973, alleging that his employment had been illegally terminated. On October 20, 1975, the court ordered him reinstated.[1]

The Boulder Police Benefit Association (BPBA) is an unincorporated association consisting of approximately 70 members of the Department. The BPBA held a formal meeting on October 30, 1975. DiLeo's fitness for official duties as a police officer with the Department was discussed. At this meeting, the BPBA passed a resolution which expressed the group's opposition to the reinstatement of DiLeo and urged the city council to appeal the decision ordering DiLeo's reinstatement.

On the morning of October 31, 1975, defendant Koltnow, a reporter, noticed a copy of the resolution posted on the bulletin board at the Department's headquarters He conducted an investigation to verify statements made in the resolution, and thereafter wrote an article reporting the BPBA meeting and the contents of the resolution. This article was published in the October 31, 1975 edition of the Boulder Daily Camera. It

---

[1] On November 21, 1975, DiLeo resigned from the Department alleging that the Department had not in good faith obeyed the court's reinstatement order.

contained actual excerpts from the resolution. By affidavit, Stephen A. Burton, vice president and acting chairman at the October 30, 1975 meeting of the BPBA, stated that the newspaper's account was a fair and accurate report of the meeting and the resolution.

On the basis of this article, DiLeo commenced the present defamation action. He asserts that the story contained the following untrue defamatory statements: "'DiLeo had on several occasions interfered with the investigation of criminal matters since his dismissal from the force,' and that 'on one noteworthy occasion DiLeo exposed an undercover narcotics officer's identity to a known narcotics dealer in the middle of a narcotics transaction' and further published the false and reckless statement that 'the B.P.B.A. members (about sixty were present for the meeting) made those charges' and that 'the B.P.B.A. voted unanimously to oppose the reinstatement . . . .'"

■ The trial court granted defendants' motion for summary judgment, ruling that DiLeo was a public figure, that the matter was of public concern, and that there were no disputed issues of fact indicating that the defendants published the article with knowledge that it was false or published the article with reckless disregard as to whether it was false. We agree with these rulings.[2]

## I.

■ In *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963), it was held that the First and Fourteenth Amendments protect freedom of expression concerning public officials,[3] and that in order to accommodate this constitutional right, a public official can only recover damages for a defamatory statement concerning his official conduct by presenting clear and convincing proof that the statement was made with actual malice. "Actual malice" in the *New York Times* sense, means that the defamatory statement was known to be false or was made with reckless disregard[4] of whether it was true or false. Although this rule places a significant burden on the plaintiff's ability to recover damages, such a rule was deemed necessary to balance the competing interests of

---

[2] In written response to defendants' motion for summary judgment, DiLeo stated "[f]or the sole purpose of this memorandum in opposition to the newspaper's motion for Summary Judgment the Plaintiff will assume these propositions [that DiLeo was a public figure and the matter which was reported was of public concern] to be accurate statements of the law and facts." Because of the importance of these questions, we will address them notwithstanding this limited concession.

[3] In *New York Times,* the public official was an elected city commissioner.

[4] "Reckless disregard" has subsequently been explained as requiring sufficient evidence that the defendant in fact entertained serious doubts as to the truth of the published statement. *See Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). In *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), "reckless disregard" was defined as requiring that the publisher act with a high degree of awareness of probable falsity. *See also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

protecting a person's reputation while at the same time providing ample breathing space to assure unrestricted debate of public issues. *See New York Times v. Sullivan, supra. See also Gertz v. Robert Welch, Inc., supra.* In *New York Times*, the United States Supreme Court noted a profound national commitment that "debate on public issues should be uninhibited, robust, and wide-open . . . ."

■ The *New York Times* rule was held to include "public figures" in *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The rule was extended primarily for three reasons. First, the public's interest in obtaining information concerning either public officials or public figures is substantially similar. Second, the same justifications exist whereby a public figure's interest in protecting his reputation ought to defer to the public interest of assuring open discussion of public issues. Both public officials and public figures usually have the ability to resort to effective self-help, *i.e.*, the ability to refute criticism and counteract false statements through effective channels of communication. *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Gertz, supra.* Finally, and more important, is the normative consideration that: "public figures, like public officials, have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.'" *Wolston v. Readers Digest Ass'n, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979), citing *Gertz, supra. See also Curtis Publishing Co. v. Butts, supra.*

A person may become a public figure in either of two ways: "For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment."
*Gertz, supra. See also Hutchinson, supra; Wolston, supra; Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).

■ Thus, two categories of public figures exist. First, there are those who acquired a status in society so as to have such persuasive power and influence to be properly deemed public figures for all purposes of comment. Such persons enjoy significant access to the effective channels of communication to rebut defamatory falsehoods, and have broadly exposed themselves to the increased risk of defamatory falsehoods through their attainment of public prominence. The second category of public figures consists of those who have thrust themselves to the forefront of a particular public controversy to affect its resolution. Such individuals would generally be capable of effectively countering criticism and exposing the falsity of defamatory statements concerning them. More importantly, this type of

public figure has invited public attention and comment in regard to the particular controversy.

■ In the instant case, we are asked to determine whether DiLeo was a public figure for purposes of this libel action. It requires no lengthy discussion to conclude that DiLeo was not a public figure for all purposes. He does not occupy a position having "persuasive power and influence." *See Hutchinson, supra; Wolston, supra; Time, Inc. v. Firestone, supra; Gertz, supra.* We therefore focus our discussion on whether Di-Leo was a public figure for the limited purpose of comment on his involvement in seeking reinstatement with the Department as a police officer.

In determining whether a person is a public figure in this category, we must primarily focus on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Wolston, supra,* at 167, 99 S.Ct. at 2707, 61 L.Ed.2d at 460, citing *Gertz, supra,* at 352, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. *See also Hutchinson, supra.* The particular controversy in the present case evolves from DiLeo's termination of employment and his various suits seeking reinstatement and redress for asserted violations of his civil rights.

■ DiLeo argues that the controversy concerned his suit to regain his position with the Department, a purely private matter. *See generally Time, Inc. v. Firestone, supra.* We disagree. Even if initially a private matter, it became a public controversy through DiLeo's efforts. *Cf. Hutchinson, supra; Time, Inc. v. Firestone, supra.* He instituted several lawsuits asserting the alleged illegal termination of his employment as well as other violations of his civil rights.[5] Rather than quietly seeking to exert his legal rights, he invited public attention and comment. Also, at his deposition, DiLeo admitted initiating contact with various newspapers and reporters. He contacted reporters from the Boulder Daily Camera, Colorado Daily, Rocky Mountain News, and the Denver Post on several occasions regarding his various lawsuits. DiLeo explained that he believed the cases to be newsworthy and that he wanted to get information to the public.

That DiLeo effectively cast himself and his views into public controversy is evidenced by the fact that his various lawsuits and charges attracted the attention of Colorado newspapers, generating at least twenty

---

[5] *DiLeo v. City of Boulder,* No. CA73-2467 (filed in the Boulder Dist. Ct. 12-7-72) in which DiLeo contested his termination from the Department and sought back pay; *DiLeo v. City of Boulder,* No. CA75-478 (filed in the U.S. Dist. Ct., Dist. of Colo. 5-1-75) in which DiLeo asserted violations of his civil rights. In an unrelated matter, DiLeo initiated the action *DiLeo v. Board of Regents of the University of Colorado,* No. CA75-2280 (filed in the Boulder Dist. Ct. 8-22-75) in which DiLeo challenged the admissions process to the University of Colorado School of Law.

articles.[6] This is not to say, however, that DiLeo was automatically converted to a public figure simply because the media's attention was attracted. *Wolston v. Readers Digest Ass'n, Inc., supra; Time, Inc. v. Firestone, supra.* Rather, it is the fact that DiLeo himself stimulated and encouraged this news coverage that caused him to become a public figure. By seeking out media coverage of his effort to regain his position with the Department, he voluntarily exposed himself to the increased risk of injury to his reputation resulting from defamatory falsehoods concerning his fitness as a police officer. Consequently, the trial court correctly ruled that DiLeo was a public figure for purposes of this libel action.

The defendant and amicus curiae also argue that DiLeo was a public official, and that the defendants were privileged to report matters of public or general concern. We do not consider these issues because of our resolution of the question whether DiLeo was a public figure.

## II.

We next consider whether the trial court properly granted summary judgment. This determination hinges on whether DiLeo presented a prima facie case that the defendants published the alleged defamatory falsehoods with actual malice, and whether DiLeo has made such a showing with convincing clarity. In resolving these questions, we must make an independent examination of the entire record to insure that the First Amendment freedom of speech has been properly protected. *New York Times v. Sullivan, supra. See also Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). We agree with the trial court that DiLeo has not successfully shown by convincing clarity that the defendants published the article with actual malice, and accordingly, summary judgment was properly granted.

As discussed above, the United States Supreme Court has indicated that the First Amendment requires a showing of actual malice when a public official or public figure institutes a defamation action. A public official or public figure must prove actual malice by "convincing clarity" in order to recover damages resulting from a defamatory statement. *New York Times v. Sullivan, supra. See also Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967); *Walker v. Colorado Springs Sun, Inc.,* 188 Colo. 86, 538 P.2d 450 (1975), *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The United States Supreme Court has used the standard of proof by "clear and convincing evidence" interchangeably with that of "convincing clarity." *Gertz, supra.* "Clear and convincing evidence" is "that evidence which is stronger than a 'preponderance of the evidence' and which is unmistakable

---

[6] This does not include media coverage of DiLeo's suit against the University of Colorado Board of Regents in which DiLeo claimed he was denied admission to the law school as a result of "reverse discrimination."

and free from serious or substantial doubt." *Colorado Jury Instructions* (2d ed.) 3:2.

■ This standard of proof applies equally at the summary judgment stage of judicial proceedings in this type of case. As aptly stated by the Wyoming Supreme Court:

"In ruling upon the presence of a genuine issue of fact as to the existence of actual malice the trial judge must decide whether: 'the plaintiff has offered evidence of a *sufficient quantum to establish a prima facie case,* and the offered evidence *can be equated with the standard or test of 'convincing clarity'* prescribed by United States Supreme Court decisions . . . .'" (Emphasis in original.)

*Adams v. Frontier Broadcasting Co.,* 555 P.2d 556, 562 (Wyo. 1976), citing *Chase v. Daily Record, Inc.,* 83 Wash.2d 37, 43, 515 P.2d 154, 157 (1973). *See also Kidder v. Anderson,* 354 So.2d 1306 (La. 1978). *Accord United Medical Laboratories v. Columbia Broadcasting System, Inc.,* 404 F.2d 706 (9th Cir. 1968), *cert. denied,* 394 U.S. 941, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); *Guitar v. Westinghouse Elec. Corp.,* 396 F. Supp. 1042 (S.D.N.Y. 1975); *Cerrito v. Time, Inc.,* 302 F.Supp. 1071 (N.D. Cal. 1969), *aff'd per curiam,* 449 F.2d 306 (9th Cir. 1969). *But see Weaver v. Pryor Jeffersonians,* 569 P.2d 967 (Okla. 1977); *Tagawa v. Maui Publishing Co.,* 427 P.2d 79 (Haw. 1967).

■ DiLeo argues that actual malice is an evasive, abstract concept, hard to prove and hard to disprove, and therefore inappropriate for resolution by summary judgment. To the contrary, summary judgment is particularly appropriate in these cases. Were not summary judgment granted in proper cases, the threat of protracted litigation might have a chilling effect upon the full and free exercise of the First Amendment right sought to be protected by *New York Times v. Sullivan* and its progeny. *See, e.g., Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858 (5th Cir. 1970); *Washington Post v. Keogh,* 365 F.2d 965 (D.C. Cir.· 1967), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); *Buchanan v. Associated Press,* 398 F.Supp. 1196 (D.C. 1975); *Guitar v. Westinghouse, supra; Cerrito v. Time, Inc., supra; Adams v. Frontier Broadcasting, supra.*

In this case, the defendants moved for summary judgment. In support of their motion, they submitted several affidavits, answers to interrogatories, and a summary of DiLeo's deposition[7] which, taken together, effectively show that the defendants did not publish the article concerning DiLeo with actual malice as above-defined. It was shown that the defendants had no reason to doubt the truth of the report of the BPBA meeting and the allegations concerning DiLeo. The defendants' sources were reliable,

---

[7] DiLeo never objected to this summary of his deposition.

and a thorough independent investigation was conducted to substantiate the truthfulness of the statements in the published newspaper article.

DiLeo, on the other hand, filed no opposing affidavits, answers to interrogatories, or other supporting documents. Rather, he argued that no rule of law required him to place his witnesses before the court and prove his facts at a hearing on a motion for summary judgment. This position is erroneous for two reasons. Most fundamentally, C.R.C.P. 56(e) provides that: "When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon mere allegations or denials of his pleadings but his response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." It was DiLeo's responsibility to present a genuine issue whether the defendants published the alleged defamatory falsehoods knowing them to be false, or with reckless disregard as to their truthfulness. This DiLeo did not do. DiLeo's general allegations that the statements contained in the article were false, or that the defendants should have known they were false, do little to establish a genuine issue of fact whether the article was published with actual malice. *See Martin Marietta Corp. v. Evening Star Newspaper,* 417 F.Supp. 947 (D. D.C. 1976); *F & J Enterprises, Inc. v. Columbia Broadcasting Systems, Inc.,* 373 F.Supp. 292 (N.D. Ohio 1974). DiLeo has failed to establish a prima facie case by a sufficient quantum of evidence which can be equated with the standard of convincing clarity.

Summary judgment was properly granted.

The judgment is affirmed.