**John LANE, Plaintiff-Appellant,**

**v.**

**ARKANSAS VALLEY PUBLISHING COMPANY, a Colorado corporation, Merle Baranczyk and Ed Quillen, Defendants-Appellees.**

**No. 81CA1090.**

Colorado Court of Appeals.

May 5, 1983.

Rehearing Denied June 2, 1983.

Certiorari Denied Dec. 19, 1983.

---

Spurgeon, Haney & Howbert, P.C., Gregory R. Piche, Nancy Chase Miller, Colorado Springs, for plaintiff-appellant.

Cooper & Kelley, Thomas B. Kelley, Paul D. Cooper, Denver, for defendants-appellees.

STERNBERG, Judge.

The plaintiff, John Lane, brought a libel action against the Arkansas Valley Publishing Company, publisher of The Mountain Mail; Merle Baranczyk, the newspaper's editor; and Ed Quillen, reporter and columnist. The defendants' motion for summary judgment was granted and the trial court dismissed the action. Lane appeals and we affirm.

A series of articles, most of which were satirical in tone, was published in The Mountain Mail, a newspaper serving the town of Salida and surrounding areas of Chaffee County. At that time there was a campaign to recall Lane from his position as county commissioner. The articles, which appeared in signed columns and editorials, were critical of Lane's performance of his official duties. The recall effort was successful, and Lane asserts that his recall was the direct result of damage to his reputation caused by defamatory statements in the articles.

Alleging that the statements complained of were constitutionally privileged as opinion and political rhetoric, the defendants moved for summary judgment. In the alternative, they requested a determination of which statements were privileged and which were not so that discovery and trial preparation could proceed. In their brief in support of the motion for summary judgment, the defendants analyzed each article, to demonstrate that each one was an opinion with a factual basis. Attached to the brief as exhibits were the news stories from which the facts were taken.

Lane argued in his brief in opposition to defendants' motion that the statements labelled by defendants as opinion imply that he has committed illegal acts, and that they suggest the existence of an undisclosed, defamatory factual basis. He did not refute the factual basis, but did submit affidavits of individuals who initially had interpreted the satirical articles in their literal sense.

At the outset of the hearing on the motion for summary judgment the defendants stated that it was their intention to focus on whether there had been false statements, reserving the issue of malice for trial or a later motion. They then addressed each article and demonstrated that the facts contained therein had been the subject of prior news articles, the truth of which was not disputed. Lane prefaced his argument by redefining the scope of the hearing to whether the articles were statements of fact or opinion. He reaffirmed this understanding at the close of the hearing, stating that "malice and the factual issues" would be addressed at a later time, and the court agreed to this limitation.

The court granted the motion for summary judgment, ruling that the statements were constitutionally protected opinions, and that Lane failed to carry his burden of proof on the falsity of the factual assertions and defendants' malice or reckless disregard for the truth.

On appeal, Lane argues that the trial court erred in rendering a decision on issues not before it and in its conclusion that the articles were constitutionally protected opinions.

## I.

■ We hold that it was proper for the court to address the issues of falsity and reckless disregard for truth on the motion for summary judgment.

C.R.C.P. 56(c) provides that a summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Once a movant makes a convincing showing, C.R.C.P. 56(c) requires that the opposing party adequately demonstrate that a real controversy exists. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978).

Both parties' trial court briefs addressed the full range of issues despite the limited scope of the hearing, and the court did not err in basing its ruling on the briefs and supporting materials in the court's file. In

a different setting the Supreme Court stated:

" 'Defendant urges that this question of law cannot be determined until the court is apprised of all the facts. However *on the facts submitted* if the question of law is capable of determination the decision should not be withheld because of a claim of other facts, not disclosed, which might result in a different determination....' It is apparent from the matters that were before the court that a different result would not have been obtained had the president of the company been called as a witness to testify on the issue ...." *Norton v. Dartmouth Skis, Inc.,* 147 Colo. 436, 364 P.2d 866 (1961) (emphasis in original)

Here, the matters before the court were sufficient to inform it whether the articles implied the assertion of undisclosed facts and, where there was an issue as to truth or falsity of those facts, whether defendants acted with reckless disregard of whether they were false or not.

## II.

Turning to the substantive issues, we address first the trial court's conclusion that several of the articles were constitutionally protected opinion, and agree that the trial court properly granted defendants' motion for summary judgment with respect to these articles.

■ Remarks disparaging the conduct of public officials must be considered against the background of a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To that end, the Supreme Court extended special protection to political opinions when it stated, "[T]here is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges or juries but on the competition of other ideas." *Gertz v. Welch,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

In *Bucher v. Roberts,* 198 Colo. 1, 595 P.2d 239 (1979), the court adopted the approach of the *Restatement (Second) of Torts* § 566 (1976) to determine whether a statement is one of fact, and thus actionable, or one of opinion. Using that approach, the court held a statement which is ostensibly an opinion is actionable "only if it implies the allegation of undisclosed defamatory facts as the basis of the opinion." Comment c of *Restatement* § 566 elaborates on this point, stating:

"If the defendant bases his expression of a derogatory opinion on the existence of 'facts' that he does not state *but that are assumed to be true by both parties to the communication,* and if the communication does not give rise to the reasonable inference that it is also based on other facts that are defamatory, he is not subject to liability, whether the assumed facts are defamatory or not." (emphasis added)

The Supreme Court reaffirmed this analysis in *Burns v. McGraw-Hill Broadcasting Co., Inc.,* 659 P.2d 1351 (1983), but added additional inquiries. Citing *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781 (9th Cir. 1980), the court enumerated factors to be examined when the speech at issue might be considered protected opinion: whether the statement is prefaced by the phrase "in my opinion" or language of similar import; the entire context of the statement; and the circumstances surrounding the statement, including the medium through which it is communicated and the audience to which it is directed.

Using this line of inquiry, a comment may appear on its face to be a statement of fact, but when considered in its context would readily be perceived to be rhetorical hyperbole, and not intended to be understood in its literal sense. *See National Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). This approach ex-

pressly recognizes that comments made in the context of a hotly contested political campaign should not be judged by the same standard as those made in other contexts.

■ An article in the form of an opinion which could imply the commission of illegal activity is actionable if the context in which it appears suggests it was meant literally. *Cianci v. New Times Publishing Co.*, 639 F.2d 54 (2d Cir.1980). But, it is not actionable if it would be understood as rhetorical hyperbole meant to express an opinion on the plaintiff's performance of his job. *Okun v. Superior Court*, 29 Cal.3d 442, 175 Cal.Rptr. 157, 629 P.2d 1369 (1981); *Palm Beach Newspaper, Inc. v. Early*, 334 So.2d 50 (Fla.App.1976).

In *Information Control Corp. v. Genesis, supra,* the court held that comments clearly going to the merits of a controversy under public scrutiny, but which could have been interpreted as a charge of illegal activity, were not libelous because in that context an audience may anticipate efforts to persuade by the use of rhetoric and epithet. The same was true of statements made in *Okun v. Superior Court, supra,* in the context of a campaign to repeal a city ordinance.

■ Use of the technique of satire, as in many of the articles here, does not alter the analysis. The particular style of writing involved is part of the "context" to be examined when determining whether the statement could reasonably be understood as an assertion of fact. As with other forms of expression, if a satirical writing reasonably implies the assertion of a factual charge that would be defamatory if made expressly it is not protected by the cloak of constitutional privilege. *Pring v. Penthouse International, Ltd.*, 695 F.2d 438 (10th Cir.1982); *Restatement (Second) of Torts, supra* (comment d). *See also* Hill, *Defamation & Privacy Under the First Amendment*, 76 *Colum.L.Rev.* 1205 at 1310 (1976).

## A.

■ The first article complained of is a column published on May 4, 1979, in which the author purports to quote from a letter attributed to Lane. The letter is signed by "John Lane, Supreme Commander" and informs county employees of a new personnel code along the lines of a code for military discipline. The article also comments on an incident involving so-called "secret meetings." Both of these topics had been the subject of extensive reporting and controversy, as evidenced by defendant's exhibits. Lane alleges that this letter defamed him by portraying him as anti-democratic and militaristic.

Taken out of context, the article appears to assert that Lane was the author of such a letter. Although admittedly false, that in itself is not actionable libel because the context of the letter must be considered to determine whether it may reasonably be understood to imply the assertion of fact. As with the article in *Myers v. Boston Magazine Co., Inc.*, 380 Mass. 336, 403 N.E.2d 376 (1980), in which a sportswriter stated that a sportscaster was enrolled in a remedial speech class, the format and language indicates the letter was a tongue-in-cheek effort to portray the author's opinion of Lane's personnel policies and conduct of office. The factual basis for the opinion is disclosed in the article. Thus, the trial court was correct in granting summary judgment with respect to this article. *See Restatement § 566, supra.*

## B.

Lane complains of articles published on October 5, 1979, November 8, 1979, December 6, 1979, and January 18, 1980, in the form of conversations with a character named "Ananias Ziegler," which the trial court labelled "obvious satire" and protected by the First Amendment. We note that "Ananias" is a biblical character noted for untruthfulness, while "Ziegler" is the surname of former President Nixon's press secretary. The article in which the character is introduced informs the reader that Ananias Ziegler formerly was in charge of

752

inflating body counts in Vietnam, did public relations work for former President Nixon, and was hired by Lane with county funds to respond to the recall campaign. The articles comment on Lane's efforts to fight the recall effort, his decisions on housing development, his campaign practices, a proposed budget, and expenses to retain an independent auditor.

Lane contends that these articles are factual assertions that he committed illegal acts by hiring Ananias Ziegler with county funds for personal gain. He also asserts the articles imply the existence of an insider who acknowledges that Lane ignored the official hiring procedure, is partial to real estate developers, is not concerned about the legality of his campaign, and holds a cynical and contemptuous attitude toward the public.

■ Here, in the context of a heated recall campaign, the trial court correctly concluded that the comments of a fictional character with an unlikely background cannot be taken as serious allegations of illegal use of county funds or other illegal activity and were protected opinions. Moreover, to the extent that the comments allude to a factual basis, because defendants demonstrated that these facts had been the subject of news articles and Lane submitted no evidence to the contrary, Lane did not sustain his burden of making a prima facie showing that defendants published defamatory falsehoods with reckless disregard of whether they were true or false. *See DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318 (1980).

C.

■ Two articles published on November 30, 1979, and February 15, 1980, entitled "The Mail's Opinion," speculate on how a new ordinance will be enforced, make a general charge that county administration is disorganized, allege that funds are not wisely spent, contend that public opinion is ignored, and make other assertions. The

articles contain the facts upon which the comments are based. The facts having been disclosed in the articles, and there being no charge that the facts are false, these articles are protected opinions as well. *Bucher v. Roberts, supra; DiLeo v. Koltnow, supra.*

In the context of intense political debate, where the audience may anticipate efforts to persuade by the use of fiery rhetoric or hyperbole, the articles we have considered in this section II are in the realm of opinion. *See Okun v. Superior Court, supra.*

III.

We now address Lane's claim that certain editorials contained erroneous factual assertions that were libelous. In editorials published September 21, 1979, October 11, 1979, and October 19, 1979, defendants criticize budget decisions and charge Lane with holding secret meetings and lying. They are not couched in satirical language, and, in contrast with other language about plaintiff's suspected motivation, attitude toward the public, or competence as county commissioner, these statements may reasonably be interpreted as assertions of fact rather than protected opinion.

■ When a communication involves a factual assertion, to survive a motion for summary judgment, a plaintiff must present a prima facie case that the defendant published defamatory falsehoods with actual malice, and make this showing with convincing clarity. *DiLeo v. Koltnow, supra.* An opposing party may not rest on the mere allegations of his pleadings; rather, he must set forth specific facts showing there is a genuine issue for trial. *DiLeo v. Koltnow, supra.* The trial court ruled that Lane did not meet this burden, and we agree.

■ In this case, in support of their motion for summary judgment defendants submitted excerpts from depositions and news articles demonstrating the factual ba-

sis for the editorials. Lane was unable to show in response that the factual bases were false or that defendants did not undertake a reasonable investigation before publishing the editorials. It was Lane's responsibility to present a genuine issue whether defendants published alleged defamatory falsehoods knowing them to be false, or with reckless disregard as to their truthfulness. *DiLeo v. Koltnow, supra.*

This Lane did not do; thus, summary judgment was properly granted.

The judgment is affirmed.

BERMAN and COYTE,* JJ., concur.

---

\* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.)