Jack E.L. RUSSELL and Elsie M. Russell, Plaintiffs-Appellants,

v.

Don McMILLEN, Susan McMillen, Michael Cochran, Joel Kassiday, McMillen Publishing Company, Inc., a Colorado corporation, and The Triangle Review, Defendants-Appellees.

No. 82CA0706.

Colorado Court of Appeals, Div. I.

May 24, 1984.

Tucker & Brown, C. Jean Smollett, William Tucker, Denver, for plaintiffs-appellants.

Cooper & Kelley, P.C., Thomas B. Kelley, Denver, for defendants-appellees.

BABCOCK, Judge.

In this libel action, plaintiffs, Jack E.L. and Elsie M. Russell, appeal from the trial court's entry of summary judgment in favor of defendants. We affirm.

The action arose from a series of articles, editorials, and cartoons published in the Triangle Review, a semi-weekly Fort Collins newspaper, in October 1976, August 1977, and October 1977. The publications brought into question the propriety of a purchase of certain land by the Russells from the Platte River Power Authority (PRPA), a corporate political subdivision, created by contract among four municipalities.

In September 1976, defendant Don McMillen read an item in the Rocky Mountain Journal which reported a purchase of real property by the Russells from PRPA for the sum of $85,000, secured by a deed of trust in favor of PRPA in the amount of $79,000. This item caused McMillen concern because it appeared that Russell, a city councilman, had borrowed money and purchased real property from a subsidiary agency of the city.

McMillen reviewed the deed of trust and promissory note, dated September 13, 1976, and recorded with the clerk and recorder for Larimer County on September 16, 1976. The deed of trust recited that PRPA "hereby sells and conveys" certain real property to the Russells. Nothing of record indicated that the Russells had entered any contract for the purchase of the property prior to the dates of the recorded instruments. To McMillen, the recorded documents confirmed that plaintiffs had in fact purchased land and obtained a loan from PRPA on September 16, 1976.

Thereafter, McMillen spoke to several officers and directors of PRPA. From them he learned that the property had been sold to the Russells for a profit, but that PRPA did not know that the Russells were the buyers; that the property was initially purchased by PRPA for the purpose of securing a powerline easement with the intent to resell it; and that, at the time of the transaction with the Russells, PRPA had no policy regarding the sale of land to municipal officials. McMillen was informed that the real estate agent retained by PRPA for

the purpose of securing powerline easements personally handled the transaction between PRPA and the Russells. McMillen placed an anonymous telephone call to the agent, but sought only general information about the property rather than specific details of the transaction between PRPA and the Russells.

McMillen then spoke to Russell about the transaction. Russell informed him that the agent had handled several prior real estate transactions for him, that he trusted the agent, and that he permitted the agent to handle the PRPA purchase for him. Russell stated that the agent handled this purchase anonymously, that he (Russell) was not informed of the seller's identity until after the transaction, and that he then checked with the Fort Collins city attorney to ascertain whether there was a conflict of interest. The city attorney told him that there was not. In addition, Russell informed McMillen that he had been recently appointed by the city council as an alternate member of the PRPA Board of Directors (PRPA Board).

McMillen's follow-up with the city attorney indicated that his opinion as to the absence of a conflict of interest was based upon Russell's statement that he had not acted on any knowledge obtained in his official capacity. The city attorney also stated that, to his knowledge, Russell had not been appointed an alternate member of the PRPA Board at the time of the land transaction.

However, McMillen's review of the city council minutes reflected that Russell's appointment to the PRPA Board occurred on August 24, 1976. This information, together with the documents recorded on September 16, 1976, led McMillen to conclude that Russell was an alternate member of the PRPA Board at the time of the sale.

On October 6, 1976, the Triangle Review published an article reporting the details of McMillen's investigation. In connection with the article, an editorial entitled, "Should Officials Be Involved in Land Deals?" and a cartoon were run. The editorial raised two questions: (1) Whether PRPA should sell surplus land through a real estate agent or whether such land should be sold through legal advertising aimed at the general public; and (2) whether Councilman Russell should have purchased the PRPA land.

Shortly after publication of the October 6, 1976, edition of the Triangle Review, Russell happened to meet Triangle Review managing editor, Joel Kassidy, and informed him that the information contained in the publications "wasn't so." In addition, McMillen was advised by a third person that certain information contained in the article regarding a proposed road in the area of the property was incorrect. However, McMillen did not receive any other information from any other source indicating that the information in the article and editorial was incorrect.

In August 1977 McMillen read another item in the Rocky Mountain Journal reporting that Russell had sold the property for $131,600. McMillen called Russell who confirmed the sale and stated, "It was an investment, and it paid off. I felt myself very fortunate." Russell did not, however, indicate that anything contained in the previously published article and editorial was false.

On August 31, 1977, the Triangle Review published another article, editorial, and cartoon concerning the initial purchase and subsequent resale of the property by Russell. The article recited the circumstances of the purchase and resale and restated Russell's original explanation of the purchase. The editorial expressed the opinion that the actions of the public officials involved in the transaction, including Russell, constituted a conflict of interest and questioned PRPA's land sale policy.

Shortly thereafter an article appeared in the local daily newspaper from which McMillen learned for the first time that Russell contended the purchase of the property from PRPA had occurred on August 10, 1976, the date on which Russell had executed a specific performance contract. In response, McMillen published additional editorials in the Triangle Review on

October 1, 1977, and October 5, 1977. These editorials restated McMillen's position with respect to the transaction and referred to the September 16, 1976, recording date as the date the transaction "became official" and as the time the "sale was finalized."

On October 15, 1977, another article was published in the Triangle Review which stated that the district attorney intended to discuss the transaction with Russell. This article again raised the question of conflict of interest.

In January 1978, the Russells filed their complaint. In their motion for summary judgment, defendants asserted that the statute of limitations barred an action in libel based on the August 6, 1976, publications; that the only statement of fact of which the Russells complained, *i.e.*, that Russell was a member of the PRPA Board at the time he purchased the property, was not published with actual malice; and that the remaining portions of the publications of which plaintiffs complained constituted privileged expressions of opinion.

■ In granting defendants' motion for summary judgment, the trial court concluded the Russells failed to show by clear and convincing evidence that the factual matters contained in the publications were published with reckless disregard as to their truth or falsity or with knowledge of their falsity. Although the trial court did not address specifically the statute of limitations or the issue of opinion, constitutional defamation cases compel de novo appellate review. *Bose Corp. v. Consumers Union of United States, Inc.*, — U.S. —, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Kuhn v. Tribune-Republican Publishing Co.*, 637 P.2d 315 (Colo.1981). Therefore, we must address all the questions raised by the parties.

### I. The 1976 Publications

■ Section 13–80–102, C.R.S., requires all actions for libel to be commenced within one year after the cause of action accrues. A cause of action in libel accrues when the defamatory statements are published. *Spears Free Clinic & Hospital for Poor Children v. Maier*, 128 Colo. 263, 261 P.2d 489 (1953). And, each separate publication constitutes a separate and distinct claim for libel. *Walker v. Associated Press*, 160 Colo. 361, 417 P.2d 486 (1966). Therefore, the Russells, having failed to file their complaint within one year after the October 6, 1976, publications, are barred from asserting an action for libel with respect to those publications.

### II. The 1977 Articles and Editorials

■ The parties have devoted much attention as to whether the statements contained in the publications are properly classified as statements of opinion based upon disclosed facts or statements of opinion implying criminal activity which will sustain an action for libel. However, the truth or falsity of the disclosed fact on which these statements of opinion are based has been challenged. Therefore, the standard of actual malice must be used in determining whether defendants are liable for defamation. *Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351 (Colo.1983); *Bucher v. Roberts*, 198 Colo. 1, 595 P.2d 239 (1979); *Lane v. Arkansas Valley Publishing Co.*, 675 P.2d 747 (Colo.App.1983); *Cianci v. New Times Publishing Co.*, 639 F.2d 54 (2d Cir.1980); *Restatement (Second) of Torts* § 566, comment c, and § 569, comment d. Thus, we proceed only on the question of whether the statement that Russell was an alternate member of the PRPA Board at the time of the transaction was published with actual malice.

■ Unless the alleged defamatory statements are published with actual malice, *i.e.*, with knowledge that the statements are false or with reckless disregard of whether they are false or not, the reporting of a matter involving a public official is protected. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Burns v. McGraw-Hill Broadcasting Co., supra*. To establish reckless disregard, a plaintiff must produce sufficient evidence to permit the conclusion

that defendant in fact entertained serious doubts as to the truth of his publication. *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Burns v. McGraw-Hill Broadcasting Company, Inc., supra; Willis v. Perry,* 677 P.2d 961 (Colo.App.1983).

■■■ Summary judgment is particularly appropriate in cases involving actual malice. *DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318 (1980). In determining whether a genuine issue of fact exists as to the presence of actual malice, the trial court must decide whether "the plaintiff has offered evidence of a sufficient quantum to establish a prima facie case, and the offered evidence can be equated with the standard or test of 'convincing clarity' prescribed by United States Supreme Court decisions ...." *DiLeo v. Koltnow, supra* (emphasis omitted); *Fink v. Combined Communications,* 679 P.2d 1108 (Colo. App.1984).

■■■ Here, the challenged factual statement pertained to Russell's status as an alternate member of the PRPA Board at the time he purchased the property. The publications stated that the sale occurred on September 16, 1976, the date on which the deed of trust and promissory note were recorded, and that Russell was appointed an alternate member of the PRPA Board on August 24, 1976, the date reflected in the city council minutes. From these facts of record, McMillen concluded that Russell was an alternate member of the PRPA Board at the time of the transaction and, therefore, opined that Russell was guilty of a conflict of interest and unethical conduct by using his official position for personal gain. At no time prior to the publications was McMillen informed by either Russell or any other party involved that they considered the transaction to have occurred on August 10, 1976, the date the specific performance contract was executed.

On this record, the Russells have failed to show that they would be able to produce sufficient evidence to prove with "convincing clarity" that defendants published the articles and editorials with actual malice. *DiLeo v. Koltnow, supra; Manuel v. Fort Collins Newspapers, Inc.,* 42 Colo.App. 324, 599 P.2d 931 (1979), *rev'd on other grounds,* 631 P.2d 1114 (Colo.1981). Therefore, entry of summary judgment in favor of defendants was proper.

### III. The 1977 Cartoon

■■■ A cartoon which expresses an opinion on a public issue may sustain an action for libel if it is based on false statements of fact or on undisclosed or assumed defamatory facts of which the reader is unaware. *Yorty v. Chandler,* 13 Cal. App.3d 467, 91 Cal.Rptr. 709 (1970); *Restatement (Second) of Torts* § 566, comment d; *see Burns v. McGraw-Hill Broadcasting Company, Inc., supra.* In determining whether a cartoon is actionable, a court must first determine its underlying themes. *Yorty v. Chandler, supra.*

■■■ Here, the cartoon, appended hereto, was published together with an article and editorial. It implied nothing more than the editorial judgment that the transaction involved profit to a public official under questionable circumstances. Under these circumstances, the cartoon was clearly a symbolic expression of the opinion espoused in the accompanying article and editorial. Because, as determined above, the Russells failed to show with convincing clarity that the article and editorial were published with actual malice, summary judgment in favor of defendants was properly entered with respect to the cartoon as well.

The judgment of the trial court is affirmed.

PIERCE and STERNBERG, JJ., concur.

APPENDIX