**Dr. Fred PIERCE, Plaintiff–Appellant,**

v.

**ST. VRAIN VALLEY SCHOOL DISTRICT RE–1J, Dr. Milton Etter, Kathy Hall, Martin Block, Sandra Manly, Michael Shaw & Jim Martinsen, Defendants–Appellees.**

No. 96CA0078.

Colorado Court of Appeals,
Div. I.

March 6, 1997.

Rehearing Denied April 10, 1997.

Certiorari Granted Oct. 20, 1997.

Vinton, Nissler, Allen & Vellone, P.C., Kristen L. Mix; Overton & Feeley, P.C., Jane G. Ebisch, Denver, for Plaintiff–Appellant.

Semple & Mooney, P.C., Martin Semple, Patrick B. Mooney, Denver, for Defendants–Appellees.

Opinion by Judge NEY.

Plaintiff, Dr. Fred Pierce, appeals from the summary judgment entered in favor of defendant St. Vrain Valley School District RE–1J (District) and defendants Dr. Milton Etter, Kathy Hall, Martin Block, Sandra Manly, Michael Shaw, and Jim Martinsen (individual defendants) on plaintiff's claims arising out of a settlement agreement executed in conjunction with his resignation as superintendent of the District. Plaintiff also appeals from certain pre-judgment discovery orders. We affirm.

Plaintiff was employed as superintendent of the District for approximately four years. The individual defendants were, during plaintiff's tenure, members of the District's Board of Education (Board).

In the spring of 1994, certain individuals made allegations to the District that they had been sexually harassed by plaintiff. The Board initiated a fact-finding investigation by an independent party who provided an extensive report concluding that plaintiff had subjected female employees to sexual harassment. After a review of the investigator's report, the Board sought and received plaintiff's resignation.

In conjunction with plaintiff's resignation, he and the District entered into an agreement titled Confidential Settlement Agreement and Mutual Legal Release (Agreement). The Agreement provided, in relevant part, that: (1) plaintiff would announce his resignation for "personal reasons" via a mutually agreed-upon public statement; (2) the District would not make any public statements that were inconsistent with or would contradict the public statement; (3) the fact and details of the Board's investigation "into certain allegations made by certain persons" would remain confidential, unless agreed in writing by the parties or subject to court order; and (4) neither party would make any "disparaging public comments or remarks."

Pursuant to the terms of the Agreement, the District also paid plaintiff approximately $159,000. A substantial portion of that amount represented "compensation" for potential claims raised by plaintiff for "age discrimination," "mental and emotional distress," and "defamation and damage to reputation."

Several weeks after plaintiff's resignation, *The Denver Post* published an article entitled "Schools Chief is Paid to Leave" which contained statements concerning plaintiff's resignation. Certain of the statements were attributed to individual defendants while others were attributed to "a source close to the deal."

These statements indicated that there had been allegations of sexual harassment against plaintiff, that there had been a "basis" for such allegations, and that the allegations were the reason plaintiff resigned for "personal reasons." The "source close to the deal" stated that he/she was "very glad we

let him go" and that "[i]n order to get rid of him, that's what we had to do."

One of the individual defendants was quoted as saying

> I sure hope ... [the details] ... will come to light ... because there are a lot of questions out there. People are asking good questions, and I wish I could be very forthright. I'm frustrated along with them.

The newspaper article also indicated that the District might face one or more lawsuits because of plaintiff's conduct.

As a result of the statements contained in the article, plaintiff filed this action. The complaint contained claims against all defendants for breach of the Agreement and breach of the covenant of good faith and fair dealing. It also included claims against the individual defendants for defamation, tortious interference with contract, and outrageous conduct.

Defendants filed a motion for summary judgment as to all claims. Defendants argued that the contract-based claims should be dismissed because the relevant portions of the Agreement for confidentiality violated public policy and also constituted improper prior restraints of speech in violation of the First Amendment and Colo. Const art. II, § 10. They also argued that, as a public figure, plaintiff could not recover for defamation because he had failed to demonstrate any actual malice and because the statements attributed to them were true. The trial court granted defendants' motion in its entirety.

## I.

■ Plaintiff first contends that the trial court erred in entering summary judgment on his claim for breach of the Agreement. Because we conclude that the portions of the Agreement prohibiting discussion or comment on the circumstances surrounding plaintiff's resignation violate public policy, we disagree with plaintiff's contention.

■ Parties cannot by private contract abrogate constitutional or statutory requirements or conditions affecting the public poli-

cy of the state. *University of Denver v. Industrial Commission,* 138 Colo. 505, 335 P.2d 292 (1959); *Briggs v. American Family Mutual Insurance Co.,* 833 P.2d 859 (Colo. App.1992). Contracts or provisions therein that are contrary to public policy are illegal and void. *See Metropolitan Life Insurance Co. v. Roma,* 97 Colo. 493, 50 P.2d 1142 (1935); *State Board of Dental Examiners v. Miller,* 90 Colo. 193, 8 P.2d 699 (1932), (*cert. den'd, Miller v. State Board of Dental Examiners of the State of Colorado,* 287 U.S. 563, 53 S.Ct. 6, 77 L.Ed. 496 (1932)).

This rule is not for the benefit of the party seeking to avoid its obligation under the contract but rather, for the protection of the public. *See Russell v. Courier Printing & Publishing Co.,* 43 Colo. 321, 95 P. 936 (1908).

In reaching our conclusion that the Agreement's confidentiality provisions violate public policy, we rely on the policies expressed in Colo. Const. art. II, § 10 and the Open Records Act, § 24–72–201, et seq., C.R.S. (1988 Repl.Vol. 10B).

■ Colo. Const. art. II, § 10, which is more protective of the right of free expression than the First Amendment, secures to the people a full and free discussion of public affairs. *Bock v. Westminster Mall Co.,* 819 P.2d 55 (Colo.1991). Section 24–72–201 provides that, with certain limited exceptions, it is "the public policy of this state that all public records shall be open for inspection by any person at reasonable times...." *See also Denver Publishing Co. v. University of Colorado,* 812 P.2d 682 (Colo.App.1990).

Pursuant to § 24–72–202(6), C.R.S. (1988 Repl.Vol. 10B), which was applicable at the time of these proceedings, "public records" included "all writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds." Pursuant to § 24–72–202(5), C.R.S. (1996 Cum. Supp.), the term political subdivision includes "school districts."

The purpose of open records statutes is to assure that the workings of government are

not unduly shielded from the public eye, and this purpose is of particular significance in situations in which the expenditure of public funds is involved. *International Brotherhood of Electrical Workers Local 68 v. Denver Metropolitan Major League Baseball Stadium District,* 880 P.2d 160 (Colo.App. 1994).

In addition to the public policy favoring disclosure expressed in the Open Records Act, we also note the General Assembly's 1993 passage of § 24–19–102, et seq., C.R.S. (1996 Cum.Supp.), concerning payment of post-employment compensation to government-supported employees. That statutory article provides, in relevant part, that information regarding amounts paid or benefits provided under employment dispute settlement agreements between government units and their employees and involving payment of compensation after the official's term of employment shall be a matter of public record. *See* § 24–19–105(1)(a), C.R.S. (1996 Cum.Supp.). It also requires the state governmental unit to file a copy of any such settlement agreement with the Department of Personnel and provides that the agreement constitutes a public record. *See* § 24–19–105(1)(b), C.R.S. (1996 Cum.Supp.).

In passing this article, the General Assembly noted that:

[T]he provision of large payments to government-supported officials and employees after their employment has ended has caused grave damage to the trust of the citizens of this state in their state and local government officials. Because of these concerns, the general assembly finds and declares that this is a matter of statewide concern.

*See* § 24–19–101(1)(c), C.R.S. (1996 Cum. Supp.).

The constitutional and statutory provisions, when considered together, cause us to conclude that it is the strong public policy in Colorado that the terms and facts surrounding a settlement agreement between a government entity and a public official generally may not be kept secret from the public, particularly if the official receives a monetary payment upon his or her departure.

Here, plaintiff does not dispute that the Agreement is a public record subject to disclosure, nor does he assert that it is subject to any statutory protection from disclosure under the Open Records Act. He, nevertheless, asserts that the confidentiality provisions contained in the Agreement should be enforced pursuant to the intent of the parties. However, in our view, this would be tantamount to allowing a public entity to create by contract a new exception to the disclosure requirements of the Open Records Act. *See Denver Publishing Co. v. University of Colorado, supra* (agreements that information concerning settlement process would remain confidential are not sufficient to transform a public record into a private one); *see also Anchorage School District v. Anchorage Daily News,* 779 P.2d 1191 (Alaska 1989) (a public agency may not circumvent statutory disclosure requirements by agreeing to keep the terms of a settlement agreement confidential).

Courts in other jurisdictions have concluded that similar confidentiality provisions between school districts and their employees violate public policy and will not support a cause of action for their alleged breach. *See State, ex rel. Sun Newspapers v. Westlake Board of Education,* 76 Ohio App.3d 170, 601 N.E.2d 173 (1991) (a public entity cannot enter into enforceable promises of confidentiality with respect to public records); *Journal/Sentinel, Inc. v. School Board of School District of Shorewood,* 186 Wis.2d 443, 521 N.W.2d 165 (Wis.App.1994); *see also Picton v. Anderson Union High School District,* 50 Cal.App.4th 726, 57 Cal.Rptr.2d 829 (1996); R. Fossey, J. Sultanik, & P. Zirkel, *Are School Districts' Confidential Settlement Agreements Legally Enforceable?,* 67 Ed. Law Rep. 1011 (1990).

In *School District of Shorewood, supra,* 186 Wis.2d at 458, 521 N.W.2d at 172, the court affirmed the entry of summary judgment in favor of a newspaper which sought access to a confidential settlement agreement between a former school superintendent and a school district, stating in a passage that we find particularly persuasive:

[T]he main purpose of the public records law is to enable the citizenry to monitor

and evaluate the performance of public officials and employes [sic]. If information relating to a settlement and the underlying personnel dispute are kept confidential, the public is deprived of this ability. For this reason the pledge of confidentiality itself is troublesome because the custodian making the pledge is purporting to grant an exception to the public record law. This is particularly troublesome when the settlement involves the payment of money by the government. The public's interest in such information is generally great.

In summary, we conclude that the provisions in the Agreement here prohibiting discussion or disclosure of the circumstances surrounding plaintiff's resignation and prohibiting disparaging comments or remarks are void as a violation of public policy.

■ We acknowledge the countervailing interest at issue here of upholding confidentiality agreements and thereby encouraging settlement of disputes. However, that interest must give way in circumstances such as this in which a governmental entity attempts to conceal from public knowledge the circumstances surrounding the departure of a public official and payment of public funds. *See Denver Publishing Co. v. University of Colorado, supra* (public's right to know how public funds are expended outweighed potential "chill" in future ability to resolve internal disputes through confidentiality agreements); *see also Anchorage School District v. Anchorage Daily News, supra* (open records statutes reflect a policy determination favoring disclosure of public records over the general policy of encouraging settlement).

■ Accordingly, we conclude that the trial court properly entered summary judgment in favor of defendants on plaintiff's claim for breach of the Agreement. Moreover, because plaintiff's claims for breach of the covenant of good faith and fair dealing and for tortious interference with contract required the existence of a valid contractual provision, summary judgment was also proper as to those claims.

## II.

Plaintiff next contends that the trial court erred in entering summary judgment on his claim of defamation. Again, we disagree.

Plaintiff argues that the allegations of sexual harassment were not "bona fide" because the substance of those allegations was not true. Accordingly, plaintiff argues, genuine issues of fact remain as to his defamation claim.

■ We agree with the trial court that the truthfulness of the harassment allegations themselves is not at issue in this case. Rather, plaintiff's defamation claim concerns only the truth of the factual statements in the newspaper article that "allegations of sexual harassment" were made, that the allegations "were flying around back in May," that the Board "found basis for the rumors," and that plaintiff resigned for personal reasons because of the rumors. We also agree with the trial court's determination that the overall substance or gist of these factual statements reported in the newspaper was true, *see Gomba v. McLaughlin,* 180 Colo. 232, 504 P.2d 337 (1972); *Pittman v. Larson Distributing Co.,* 724 P.2d 1379 (Colo.App.1986), and that any remaining statements constituted opinion.

■ Even if we were to assume, however, that some of the statements in the article were provable as false, summary judgment would still have been appropriate because plaintiff failed to demonstrate clear and convincing evidence of actual malice.

A public figure can recover damages for a defamatory statement concerning his conduct only by presenting clear and convincing proof that the statement was made with actual malice. *DiLeo v. Koltnow,* 200 Colo. 119, 613 P.2d 318 (1980); *Brooks v. Paige,* 773 P.2d 1098 (Colo.App.1988). This "clear and convincing" proof standard applies equally at the summary judgment stage of proceedings. *DiLeo v. Koltnow, supra.*

Actual malice means the speaker made the defamatory statement either with knowledge that it was false or with reckless disregard of whether it was true or false. *DiLeo v. Koltnow, supra; Bowers v. Loveland Publishing*

*Co.,* 773 P.2d 595 (Colo.App.1988). A showing of reckless disregard requires sufficient evidence to demonstrate that the defendant in fact entertained serious doubts as to the truth of the published statement. *Brooks v. Paige, supra.*

Here, in an effort to demonstrate actual malice, plaintiff argues that, based upon his version of the alleged harassment incidents as set forth in his affidavit, "each and every one of the defendants *should have had serious doubts* about the truth of the 'allegations' ...." (emphasis added) Plaintiff also argues that the Board's decision to enter into the Agreement, itself, demonstrates that it doubted the truth of the allegations.

■ We agree with the trial court that plaintiff's "evidence" and argument fall well short of demonstrating clear and convincing proof of actual malice. First, plaintiff's assertion that defendants "should have had serious doubts" about the veracity of the harassment allegations is irrelevant because the test for actual malice is whether these defendants actually held serious doubts about the truth of the allegations. *See Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). Furthermore, we fail to see how the Board's decision to enter into the Agreement with plaintiff could constitute clear and convincing evidence of any serious doubt over the truth of the allegations, particularly considering that the Board also decided to ask for plaintiff's resignation.

In sum, plaintiff failed to provide clear and convincing evidence that the individual defendants either knew the statements were false or entertained serious doubts as to their truth. Accordingly, the trial court's entry of summary judgment on the defamation claim was proper. *See DiLeo v. Koltnow, supra.*

### III.

We also disagree with plaintiff's contention that the trial court erred in entering summary judgment on his outrageous conduct claim.

■ A public figure may not maintain a claim for outrageous conduct when the conduct complained of is expressive behavior directed at his public persona. *Brooks v. Paige, supra.*

■ Again, here, plaintiff does not dispute his status as a public figure concerning his duties as superintendent and his resignation from that position. Nor does he dispute that his claim for outrageous conduct was premised upon the same statements underlying his defamation claim. Those statements clearly were directed at plaintiff's "public persona," rather than some aspect of his private life, because they pertained exclusively to the circumstances surrounding his resignation as superintendent of the District.

Under these circumstances, we conclude that the trial court properly entered summary judgment on plaintiff's outrageous conduct claim. *See Brooks v. Paige, supra.*

### IV.

■ Finally, plaintiff contends that the trial court abused its discretion by issuing a protective order precluding discovery from three alleged harassment victims and by quashing a subpoena issued to the reporter who authored the newspaper article. We are not persuaded.

Any discovery information plaintiff may have obtained from the alleged victims regarding the truth of their harassment allegations or from the reporter regarding the identity of the "source close to the deal" quoted in the article would not alter our conclusion that summary judgment was properly entered on plaintiff's claims. Thus, even if the trial court may have erred in entering these discovery orders, such error was harmless. *See C.R.C.P. 61.*

The judgment is affirmed.

STERNBERG, C.J., and METZGER, J., concur.