*In re* MUNRO'S ESTATE.
CLAIM OF DOODY.

1. EXECUTORS AND ADMINISTRATORS—IMPLIED CONTRACT FOR PERSONAL SERVICES—STATUTE OF LIMITATIONS—QUESTION FOR JURY.
    In proceeding against estate to recover for personal services rendered decedent and his wife over a period of upwards of 20 years while plaintiff and her husband occupied upper portion of house in which decedent lived, evidence *held*, sufficient to present to jury issue as to whether the alleged implied contract had been established and whether the obligation was barred by the statute of limitations (3 Comp. Laws 1929, § 13976).

2. SAME—EXCESSIVE VERDICT—GREAT WEIGHT OF EVIDENCE—COMPROMISE.
    Verdict of $6,500 for claimant against decedent's estate for personal services rendered by her for decedent and his wife over a period of upwards of 20 years *held*, not against the great weight of evidence, excessive, nor the result of compromise.

3. CONTRACTS—IMPLIED CONTRACTS.
    Implied contracts are those which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract.

4. WORK AND LABOR—IMPLIED CONTRACTS.
    A contract may be implied where one engages or accepts beneficial services of another for which compensation is commonly paid and naturally anticipated.

5. SAME—IMPLIED CONTRACTS—PAYMENT—DEATH—STATUTE OF LIMITATIONS.
    Usually a promise to pay is implied where beneficial services are rendered and accepted and, where payment was not to be made until the death of the obligor, the statute of limitations does not begin to run until his demise (3 Comp. Laws 1929, § 13976).

As to necessity of contract for recovery for services rendered, see Restatement, Restitution, § 107.

6. EXECUTORS AND ADMINISTRATORS—IMPLIED CONTRACT—QUESTION FOR JURY—EVIDENCE.

Question for a jury is presented where testimony is such that it may fairly sustain an implied obligation to pay for the services rendered by plaintiff in proceeding to recover against a decedent's estate.

7. SAME—PAYMENT ON AFFIRMATIVE DEFENSE.

In proceeding to recover for personal services rendered decedent, plaintiff is not required to show nonpayment therefor since payment is an affirmative defense to be established by the executor.

8. WILLS—NONRELATIVES—IMPLIED CONTRACTS—PAYMENT.

Provision of will that testator had made provision in his lifetime for nonrelatives and made no further provision in his will did not conclusively rebut inference of plaintiff's alleged implied contract for personal services rendered decedent nor establish that plaintiff had been paid.

9. TRIAL—INSTRUCTIONS.

Instruction given by court in jury trial of claim for personal services rendered decedent in which court made reference that services were rendered to ''said estate'' instead of decedent was not prejudicial when considered in connection with entire charge.

10. SAME—ARGUMENT OF COUNSEL—INSTRUCTIONS.

In proceeding against estate to recover on alleged implied contract for services rendered decedent and his invalid wife over a period of upwards of 20 years, references in argument of plaintiff's counsel to testimony, which had been received without objection, that decedent had promised to give plaintiff the house and lot in which both decedent and his wife and plaintiff and her husband had resided *held,* not prejudicial where court instructed jury that plaintiff did not seek to recover the value of the house but that the statements were to be considered in connection with whether the services rendered were voluntary and gratuitous or rendered with expectation of compensation.

Appeal from Jackson; Simpson (John), J. Submitted October 18, 1940. (Docket No. 110, Calendar No. 41,312.) Decided January 6, 1941.

In the matter of the estate of Donald Munro, deceased. Maude M. Doody presented her claim.

From order denying claim, claimant appealed to circuit court. Verdict and judgment for claimant. Jackson City Bank & Trust Company, executor, appeals. Affirmed.

*James J. Noon, John E. Shekell,* and *J. Oliver Sullivan,* for claimant.

*H. D. Boardman,* for executor.

NORTH, J. Donald Munro, a resident of the city of Jackson, died February 22, 1939. His wife had died in 1931, having been more or less of an invalid for approximately the last two years of her life. They left no surviving children. In 1937 Mr. Munro made a will by which he left his estate, which was substantial, share and share alike to a brother and numerous nieces and nephews. For years Mr. Munro, and his wife during her lifetime, had lived in the first story of one of a number of houses which he owned, but he had rented the upper story. For upwards of 25 years prior to Mr. Munro's death, plaintiff and her husband had occupied as their residence the upper portion of decedent's home property. They used a common entrance, had a common water supply, and both stories of the dwelling were heated by one furnace. Plaintiff was in nowise related to Mr. Munro. After his death she filed a claim for personal services against his estate. The referee to whom the probate court referred the hearing disallowed the claim. On appeal to the circuit court, where it was tried by jury, plaintiff had verdict and judgment for $6,500. The executor of the estate has appealed.

The character of the controversy is set forth with such clarity in the circuit judge's charge to the jury, that we quote it in part:

"Now, briefly, it is the claim of the plaintiff, Mrs. Doody, that she asks compensation for services rendered to Mr. and Mrs. Munro over a period of 20 years. She claims the services were worth as a reasonable sum $10 a week. She claims that she did work for the Munros and that Mr. Munro agreed to pay for those services. She claims that she and her husband lived in the upstairs of the Munro property, and that they lived there for a great number of years. I think the testimony will show some place from 1912 or thereabouts. She claims that she rendered services for both Mr. and Mrs. Munro. She claims that she cleaned the house, acted as nurse, did errands and generally helped the Munros. She claims that she did it with expectation of pay and that it was received by Mr. Munro under an understanding and intention that it be paid for.

"The claim as filed by her states: For services from January 1, 1919, to February 22, 1939, the sum of 1,047 weeks at $10 a week. In caring for and nursing decedent and his wife, washing and ironing, attending furnace, dusting, sweeping, keeping the household in order, sewing, preparing and serving meals in decedent's home for him and his wife, helping and assisting housekeepers and nurses employed by decedent, attending to their business matters, collecting rents and other debts, paying the telephone bill and gas and water bills and other bills, writing receipts, ordering supplies, purchasing merchandise to be used by the decedent and his wife, and generally looking after decedent and his wife's home, welfare, comfort, happiness and health and in general attending to their business affairs, all of which plaintiff claims was done at the request of the decedent and his wife with the promise of remuneration therefor.

"That is briefly the claim of the plaintiff in this case.

"On the other hand, it is the defendant's claim that there was never any contract, either express or

implied, between the claimant and the decedent wherein and whereby decedent agreed or promised to pay the claimant anything for such service or any other services as she alleges in her claim filed against the estate.

"It is further the claim of the defendant that the Doodys were tenants of Mr. Munro, that they resided on the second floor of the Munro home from approximately the year 1912 to the time of his death in February, 1939, and that during all of this time they were tenants. The defendant claims Mr. Munro furnished the fuel to heat the entire home, that the Doodys paid or were supposed to pay rental in different amounts over the period of their occupancy there, that within the last few years the rental had been reduced; that for the period at least from September, 1933, when Mrs. Ladow came there as housekeeper, the Doodys were supposed to pay $15 per month rent, and that in addition Mrs. Doody had undertaken to take care of the furnace as part of the rent. The defendant further claims that over the period of time from 1933 until February, 1939, when Mr. Munro died, the Doodys in fact paid rent in the total amount of $105; that if there were any errands or small duties which Mrs. Doody had done for Mr. Munro during his lifetime, that he would have taken this into consideration in compelling them to pay rent over the entire period of time known at least to the defendant's estate.

"It is further the claim of the defendant estate that with the exception of some short intervals of time since the death of Mrs. Munro, Mr. Munro has in fact employed at least three different housekeepers to take care of the house and of him, and that these housekeepers performed services at his request and for which they were paid, for which Mrs. Doody, the claimant, is now making claim.

"It is further the claim of the defendant estate that if in fact Mr. Munro during his lifetime had

ever made any statement or statements to third parties with reference to what he intended to do for Mrs. Doody, that this was not communicated to Mrs. Doody in his lifetime. They claim that there was no understanding or agreement between Mr. Munro and Mrs. Doody with reference to this, that any expressions of this nature, if in fact they were made, were testamentary in character, that is to say, expressions of an intention to make provision in his will for her. They claim that he had a right in law to change his mind in this respect and that in fact he did change his mind, if he did ever have such an intention; that if he made any such statements to third persons and not to the claimant, this did not constitute a contract or agreement between them, and that he was in fact not bound to make such testamentary disposition, and it is further the claim of the defendant estate that Mrs. Doody at no time rendered alleged services to Mr. Munro such as with a result of either an expressed or implied contract with Mr. Munro for the payment of same, either during his lifetime or from his estate, by reason whereof defendant's estate claims that Mrs. Doody is not entitled to recover in any amount.

"It is further the claim of the defendant estate that the decedent, Donald Munro, left a written testimonial at his death, in which he recited that he had made provision in his lifetime for others not relatives of his, and hence made no further provision in his will for such other persons by reason of claimed services or otherwise; and defendant estate claims that this is an effectual denial by the decedent, through the medium of his last will and testament admitted to probate court, that he owed Mrs. Doody or anyone else for alleged services, such as she is now in this court claiming to be compensated for.

"Those, members of the jury, are briefly the claims of these two parties."

Plaintiff's claimed right of recovery was submitted to the jury solely on the issue of the estate being bound by an implied contract. In behalf of defendant there was a motion for directed verdict both at the close of plaintiff's case and also at the close of all of the proofs. On reserved motion *non obstante veredicto* the ruling was against the estate, and its motion for a new trial was denied. Appellant asserts there was error in each of these rulings.

Briefly stated, appellant urged in these motions that: (1) There was no evidence tending to support an implied contract; (2) the testimony was indicative of testamentary intent only; (3) plaintiff's claim was barred by the statute of limitations; (4) construed most favorably to plaintiff, the testimony creates only an inference that plaintiff's services were rendered in the expectation that decedent would reward her by a legacy or devise; (5) the testimony relative to declarations or admissions of decedent, in and of themselves, rebut the inference of an implied contract or that plaintiff's services were rendered in expectation of payment therefor; (6) the testimony was too vague and too general in its nature to sustain plaintiff's claim, that it permitted the jury only to speculate, conjecture or guess whether there was an implied contract, and plaintiff failed to sustain the burden of proof; and (7) that the verdict was against the great weight of evidence, excessive, and the result of compromise.

Careful consideration of this record has brought the conclusion that none of appellant's contentions just above noted are sustainable. Instead, the record discloses evidence which presented an issue for the jury as to whether the alleged implied contract had been established against the estate and whether the obligation was barred by the statute of limita-

tions.* Nor does the record sustain appellant's contention that the jury's verdict was against the great weight of evidence, that it was excessive, or the result of compromise.

In determining whether there was a question of fact for the jury in the instant case, it must be borne in mind that plaintiff was not related to Mr. Munro nor did she ever live in a family relation with the Munros. In *Woods* v. *Ayres,* 39 Mich. 345, 353 (33 Am. Rep. 396), we said: Implied contracts are those "which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." A contract may be implied where one engages or accepts beneficial services of another for which compensation is commonly paid and naturally anticipated. *Miller* v. *Stevens,* 224 Mich. 626. Where beneficial services are rendered and accepted, usually a promise to pay is implied; and if there is evidence that payment for such services was not to be made until the death of the obligor, the statute of limitations does not begin to run until his demise. *Pupaza* v. *Laity,* 268 Mich. 250. And where the testimony is such that it may fairly sustain an implied obligation to pay for the services rendered, a question of fact for the jury is presented. *In re Burg's Estate,* 282 Mich. 304.

In addition to the above-noted phases of defendant's motions, the following claims are also made. Even if an implied contract may be inferred, "no proof [was made] of nonpayment during the lifetime of decedent." To this the answer is that payment is an affirmative defense, and this burden was not met by defendant. Appellant asserts that the

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—REPORTER.

provision in Mr. Munro's will referred to in the circuit judge's charge and wherein Mr. Munro recited he made provision in his lifetime for nonrelatives "and so make no further provision for such others as there may be who may claim a right to participate in my estate in any respect, by reason of claimed services or otherwise," *conclusively* rebuts the inference of an implied contract or that plaintiff had not been paid. Clearly this contention is not tenable; otherwise, by like provision in his will, any person could *conclusively* bar a claim against his estate.

In the course of a clear, detailed and appropriate charge to the jury, the circuit judge said:

"I charge you that you have a right and should consider all of the proofs submitted upon the trial in order to determine from the relations of the parties and all the circumstances surrounding claimant, Maude M. Doody, and said estate, whether there was in fact an implied contract by which said estate is bound to compensate and pay said Maude M. Doody the reasonable value of services rendered *said estate.*"

Appellant asserts error on the ground that the quoted instruction was "not applicable to the facts in the case" because "there is no claim for services rendered *the estate.*" Clearly in using the expression "said estate" the trial judge meant Mr. Munro. At no time during this trial did plaintiff claim she had rendered any services after Mr. Munro's death, *i.e.,* to his estate. This portion of the charge could not have misled the jury. While it was not literally accurate, it was not prejudicial when taken in connection with the charge as a whole.

The only other claimed error which merits consideration is that the argument of plaintiff's coun-

sel was prejudicial. The portions of the argument of which appellant complains consisted of references to testimony received without objection to the effect that Mr. Munro had promised to give plaintiff the house and lot in which he lived, and a part of which was occupied by plaintiff and her husband as tenants. It cannot be questioned under this record that it was made clear to the jury plaintiff did not assert in this suit any right to the house and lot. The testimony of this character was received because it had a bearing upon whether plaintiff's services were voluntary and gratuitous, or whether they were rendered with the expectation on the part of Mr. Munro that plaintiff was to be compensated. If the argument was at all objectionable, which may well be doubted, it was rendered harmless by that portion of the charge to the jury which reads:

"I instruct you, members of the jury, that there has been some argument and statement made that the deceased was to leave her, Mrs. Doody, the house and a thousand dollars. I instruct you that according to this claim that she has filed she is not filing a claim for the value of this house, and there is no value of this house before you. * * * Such testimony as to the giving of the house was to show the dealings, the relations and so forth between these parties, and whether Mrs. Doody was doing these services with the expectation of pay and whether Mr. Munro received these services with the expectation of paying for the same."

The judgment entered in the circuit court is affirmed, with costs to appellee.

Sharpe, C. J., and Bushnell, Boyles, Chandler, McAllister, Wiest, and Butzel, JJ., concurred.