## PEARSON-COOK COMPANY, INC v PREFERRED PROPERTIES, INC

Docket No. 44052. Submitted January 3, 1980, at Grand Rapids.— Decided December 2, 1980.

Pearson-Cook Company, Inc., brought an action against Preferred Properties, Inc., Withey Real Estate, Inc., Constance H. Withey, Frederick W. Poel, and Lewis H. Withey, III, for monies allegedly due it as its portion of a commission for the sale of certain real property. Defendants moved for summary judgment, which motion was granted, Kent Circuit Court, Stuart Hoffius, J. Plaintiff appeals, alleging that the trial court erred in granting summary judgment on its allegations of breach of express contract, breach of contract implied in law, breach of contract implied in fact, and breach of fiduciary duties. *Held:*

1. The trial court properly granted summary judgment for defendants on plaintiff's claim of breach of express contract. The listing agreement between defendant Poel and defendant Preferred Properties, Inc. provided for a broker's commission to be paid upon the sale of the real property in question. Only if the seller refused to sell without justification was a commission to be paid to a broker producing a ready, willing, and able purchaser. Plaintiff produced such a purchaser after defendant seller had entered into negotiations for the sale of his property with another party who subsequently purchased the property. Under the provisions of the listing agreement, no commission was thereafter payable to any broker for producing a ready, willing, and able purchaser.

2. The trial court properly granted summary judgment for defendants on plaintiff's claim of breach of a contract implied in law. There was no factual basis for such a contract, defendants not receiving any benefit from plaintiff nor retaining any compensation due it.

3. The trial court properly granted summary judgment for

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers § 84.

[2] 66 Am Jur 2d, Restitution and Implied Contracts §§ 3, 4.

[3] 66 Am Jur 2d, Restitution and Implied Contracts § 2.

defendants on plaintiff's claim of breach of contract implied in fact. The conduct and language of the parties did not support an implied agreement to share the broker's commission with plaintiff.

4. The trial court properly granted summary judgment for defendants on plaintiff's claim of breach of fiduciary duties. Defendants' attempts to find a suitable buyer for the property were ongoing and were not initiated to impede plaintiff's potential involvement in the sale of the property.

Affirmed.

1. PROPERTY — SALE OF REAL PROPERTY — REAL ESTATE BROKERS — LISTING AGREEMENTS — RIGHTS OF PARTIES.

A normal listing agreement between a property owner and a broker for the sale of real property contemplates that there may be some negotiation between the property owners and a prospective purchaser, and the parties involved have a right to carry on such negotiations reasonably, in good faith, and in accordance with good business practices.

2. CONTRACTS — QUASI CONTRACTS — GROUNDS FOR CLAIM.

A showing of the receipt and retention of an inequitable benefit by one party to a transaction at the expense of another party must be made to establish a successful claim for a quasi-contractual obligation.

3. CONTRACTS — IMPLIED CONTRACTS — DETERMINING FACTORS.

A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract even though a contract is not manifested by direct or explicit words between the parties, and such intention can be determined by implication or proper deduction from the conduct of the parties, language used by them, things done by them, or other pertinent circumstances attending the transaction.

*Schmidt, Howlett, Van't Hof, Snell & Vana* (by *Benham R. Wrigley, Jr.),* for plaintiff.

*Michael A. Magnotta,* for defendants.

Amicus Curiae:

Grand Rapids Real Estate Board (by *Varnum,*

*Riddering, Wierengo & Christenson* [by *Clifford C. Christenson* and *John H. Brown*]).

Before: D. F. WALSH, P.J., and R. B. BURNS and J. H. GILLIS, JJ.

D. F. WALSH, P.J. Plaintiff, a real estate broker, brought a suit for a portion of the commission paid to defendant Preferred Properties, Inc., for the sale of certain apartment buildings. Plaintiff appeals the trial court's entry of summary judgment in favor of defendants.

Defendants Frederick Poel and Constance Withey owned the Hillcrest apartment complex and a house, both located in Wyoming, Michigan. On October 4, 1976, they listed this property for sale with Preferred Properties, Inc. The listing agreement provided for a 7% broker's commission. Preferred then filed the agreement with the Grand Rapids Real Estate Board Multiple Listing Service which sent a copy to all board members, including plaintiff. Preferred also filed a statement with the board specifying that:

"[Preferred Properties] shall split commissions on cooperative sales with other members of [MLS] on the following basis: 45% to the listing office 55% to the selling office."

Subsequent to the listing of the property, two brokers produced potential buyers who made offers to the owner. On November 4, 1976, Richard Grover, through Withey Real Estate, Inc. (controlled by Constance Withey and her husband, Lewis), offered to pay the sellers' price but not on the terms of cash with "equity out". Grover presented the financing arrangement of $70,000 down and the balance to be paid in annual installments of

$34,000 at a 10% interest rate. On the following day, the property owners extended a counteroffer which stated that the broker had until 10 p.m. on November 11, 1976, to obtain acceptance.

On November 6, 1976, plaintiff's client, Mr. and Mrs. Henry Sportel, offered to purchase the property for $350,000. This offer was rejected, and on November 10, 1976, the Sportels offered to buy the real estate at both the sellers' price and payment terms. This second offer was also rejected.

At 10 a.m. on November 11, 1976, Grover accepted the owners' counteroffer. The sale was closed on December 16, 1976, and a commission of $25,250 was paid to Preferred. As the selling office, Withey Real Estate received 55% of this sum.

On January 3, 1977, plaintiff filed a complaint against defendants.[1] An amended complaint, filed on February 21, 1978, consisted of eight counts. Plaintiff's claims for a portion of the commission paid to Preferred were based on express contract (Count I), conspiracy (Count II), unjust enrichment (Count III), and an implied-in-fact contract (Count IV). Plaintiff also alleged a violation of the National Association of Realtors' Code of Ethics (Count V), conspiracy to deprive it of a lawful commission (Count VI), breach of fiduciary duties (Count VII), and conspiracy to violate the fiduciary duties (Count VIII). A second amended complaint, filed in July, 1978, included no substantive changes. On November 17, 1978, the trial court granted defendants' motion for summary judgment on all eight counts in the complaint.

Plaintiff first argues that the trial court erred in

---

[1] The original complaint consisted of three counts: breach of contract, recovery as a third-party beneficiary of the listing agreement, and conspiracy to prevent the collection of the commission. On August 10, 1977, the trial court granted summary judgment in favor of defendant Constance Withey on the third-party beneficiary count.

ruling that the breach of contract allegation in the complaint (Counts I and II) did not state a claim upon which relief could be granted. The alleged express contract between plaintiff and Preferred is contained in defendant's letter providing for the split of the commission between the "selling office" and the "listing office". Plaintiff claims that the term "selling office" means any brokerage firm which produces the first ready, willing, and able buyer. In support of its contention, plaintiff cites the listing agreement between the property owner and the listing broker which reads as follows:

"If during the listed period, the property is sold by you or me or anyone else, or if you, or any member of the MLS [Grand Rapids Multiple Listing Service] produce a purchaser ready, willing and able to purchase the property, or within 6 months after expiration of said period a sale is made to any person to whom the property has been shown during the listed period by you or me or anyone else, I agree to pay you a commission of 7% of the sales price."

Plaintiff claims that it produced the first purchaser ready, willing, and able to purchase and is entitled, therefore, to a share of the commission as the "selling office". We disagree.

Under the terms of the listing agreement, the property owner agreed to pay a single commission to the listing broker at a predetermined amount. The commission was to be paid upon the occurrence of any of the following events: (1) the property is sold by the listing broker, property owner, or "anyone else", *or* (2) the listing broker or any other broker produces a purchaser ready, willing, and able to purchase, *or* (3) within the six months after the expiration of the listing period, the prop-

erty is sold to anyone who was shown the real estate during that period.

The events which trigger the payment of a commission are separated by the conjunction "or". The language is clearly in the alternative. It was certainly never within the contemplation of any party that the property owner was agreeing to pay more than one commission for the sale of the property. A commission was to be paid if the property was sold. Only if the seller refused to sell without justification was a commission to be paid to the broker for producing a purchaser ready, willing, and able to purchase. Just as the listing broker could not obtain more than one commission by producing more than one ready, willing, and able purchaser, neither could a number of cooperating brokers, acting through the Grand Rapids Multiple Listing Service, earn several commissions by producing several ready, willing, and able purchasers.

The issue in this case is whether the owner refused, without justification, to accept the offer presented by the plaintiff or was unjustifiably prevented by the listing broker from accepting plaintiff's offer. Only in the event of one of those conditions would the plaintiff be entitled to a commission for producing a purchaser ready, willing, and able to purchase.

The operative facts for the determination of this issue are not disputed. On October 4, 1976, the property was listed for sale with defendant Preferred Properties. On November 5, 1976, defendant Withey Real Estate presented an offer to purchase which was rejected by the owners. In response to that offer, however, the owners made a counter-offer to the purchaser produced by defendant Withey Real Estate and gave Withey Real Estate

until 10 p.m. on November 11 to obtain acceptance of their counteroffer. The counteroffer was accepted within the time allotted.

The listing agreement which we interpret here, like any normal listing agreement, contemplates that there may be some negotiation carried on between the owners and a prospective purchaser. The parties have a right to carry on those negotiations reasonably and in good faith and in accordance with good business practices. There is nothing in this listing agreement which would preclude the owners from making a counteroffer to a prospective purchaser containing terms which varied from the terms of the listing agreement nor from allowing the prospective purchaser a reasonable time to accept the counteroffer. Whether or not the counteroffer was legally revocable by the owners, we find that the owners were not required by the provisions of the listing agreement to retract a commitment made in good faith and in accordance with good business practices because either the listing broker or a cooperating broker had subsequently produced another purchaser ready, willing, and able to purchase on the original terms of the listing agreement.

Under the agreed upon facts of this case, therefore, the listing agreement did not require the owners to terminate their negotiations with the first prospective purchaser and accept the offer presented later by the plaintiff. Since the owners sold their property in accordance with the provisions of the listing agreement and paid a commission on the sale, no commission was payable to any broker for producing a purchaser ready, willing, and able to purchase. Summary judgment on counts I and II was proper.

We next consider whether summary judgment

was proper with respect to count III which alleged a contract implied in law. In order to establish a successful claim for a quasi-contractual obligation, there must be a showing of an inequitable benefit received and retained by one party at the expense of another party. *Moll v Wayne County,* 332 Mich 274, 278-279; 50 NW2d 881 (1952), *overruled on other grounds, Brown v Dep't of Military Affairs,* 386 Mich 194, 201; 191 NW2d 347 (1971), *cert den* 405 US 990; 92 S Ct 1256; 31 L Ed 2d 457 (1972), *Brandon Twp v Jerome Builders, Inc,* 80 Mich App 180; 263 NW2d 326 (1977). In this case, defendants did not receive any benefit from plaintiff and are not retaining any compensation to which plaintiff is entitled. There is no factual basis for the contract implied in law, and summary judgment was proper.

Count IV alleges a contract implied in fact. In *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 211-212; 180 NW2d 798 (1970), the Court discussed the requirements for such a contract:

"A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. *In re Munro's Estate* (1941), 296 Mich 80. A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. *Miller v Stevens,* (1923), 224 Mich 626."

Based on the undisputed facts, no such implied contract existed in the present case. There was no demonstration of any implied agreement by way of the parties' conduct or language to support plaintiff's claim for a share of the commission. All

obligations among the real estate brokers were spelled out in the written letter concerning the splitting of commission. We conclude that summary judgment for defendants on count IV was also proper.

Finally, plaintiff argues that counts V through VIII were improperly dismissed. These counts contain allegations of violations of a provision of the National Association of Realtors Code of Ethics that a realtor cannot seek any unfair advantage over other realtors. Plaintiff also alleged that defendants breached their fiduciary duty to deal honestly and in good faith. We find no error in the trial court's entry of summary judgment.

When plaintiff extended the Sportels' offer, negotiations with the ultimate buyer were still in progress. Grover's original offer and the property owners' subsequent counteroffer occurred prior to the offer submitted by plaintiff. The facts demonstrate that the defendants' attempts to find a suitable buyer were ongoing and were not initiated in order to impede plaintiff's potential involvement in the sale of the land. Under such circumstances, defendant owners' refusal to accept the offer brought by plaintiff did not constitute any unfair business dealings.

The cases relied upon by plaintiff arise from different jurisdictions and are readily distinguishable. They involve either an express promise among brokers to work together and split a commission regardless of the party that secures the purchaser, or the failure by a listing broker to split a commission with the broker who actually procures the ultimate buyer. Neither line of cases is applicable here. We conclude that there was no factual support for the claim that the defendants breached any fiduciary duties owed plaintiff.

The decision of the trial court is affirmed. Costs to appellee.